DANIEL WING *vs.* C. WALTER HUSSEY.

Kennebec. Opinion May 27, 1880.

*Execution, — service of after death of judgment creditor. Duty of officer.*
*Trespass.*

At common law a writ of execution in the hands of an officer for service is not abated by the death of the judgment creditor, and it is the duty of the officer to serve it. The statutes of this State have not changed the common law rule in this respect.

It is the duty of an officer to serve an execution in his hands for that purpose, notwithstanding the death of the judgment creditor while the execution is in the officer's hands, and in arresting and committing the judgment debtor he is not a trespasser.

When no trespass is committed by an officer in serving an execution, it follows that the person directing the service is not guilty of trespass.

ON REPORT from superior court, Kennebec county.

TRESPASS for causing the arrest and imprisonment of the plaintiff. Date of writ, October 2, 1878. From the report it appears that July 12, 1878, Arabella Stratton, Adm'x, obtained judgment against this plaintiff before Mark Rollins, trial justice, for twenty dollars and costs; an execution was issued on that judgment, July 15, 1878, and delivered that day or the next, by the magistrate to Llewellyn Libbey, deputy sheriff, at the request of this defendant, who acted for Arabella Stratton, and directed the officer to arrest the plaintiff in this suit. Arabella Stratton died July 21, 1878. The plaintiff was arrested by the officer on the execution July 27, 1878, and committed to Augusta jail, July 31, 1878, and was dircharged therefrom on *habeas corpus*, August 9, 1878. The law court are to render such judgment in the case, as the law and evidence require.

*Baker & Baker*, for the plaintiff.

The arrest of plaintiff was unlawful. Stat. 1821, c. 63, § 1, shows that such an execution can only be served where there is a living creditor. It provides "for want of goods, chattels, and lands of the said debtor, to be by him shown unto you or found within your precinct *to the acceptance of said creditor*, &c. . . detain in your custody within our said jail until he pay . . . or *that he be discharged by said creditor* or otherwise by order

of law. R. S., c. 113, § § 21, 26, 27, require the citation for poor debtor's disclosure, to be served on the creditor ; the provision of § 27, for service upon the attorney of record is nugatory, for the moment a party dies the authority of his attorney ceases. 1 Pars. Contr. 71 ; 1 Am. Lead. Cas. 712 ; *Gleason* v. *Dodd, Adm'r*, 4 Met. 333.

The rule laid down by Freeman on Executions, § 37, that at common law, an execution issued before the death of the creditor could be served after, does not seem to be supported in its full scope by the authorities cited. There are so many qualifications and exceptions, it is not safe to adopt the rule as a whole. See 6 Mod. 290 ; 11 Mod. 35 ; 7 T. R. 20 ; *Comm* v. *Whitney*, 10 Pick. 434 ; *Beeker* v. *Beeker*, 47 Barb. 498 ; *Ellis* v. *Griffith*, 16 Mees. & W. 105 ; *Gaston* v. *White*, 46 Mo. 486 ; *Magoun* v. *McCoy's Ex.* 2 B. & M. 198 ; *Huey's Adm'r* v. *Reddin's heirs*, 3 Dana, 488.

But our chief answer to this rule is, that it is not adapted to our statutes, and is in conflict with the rights of debtors as secured and established by the laws of this State.

This defendant was a stranger. He is not a member of the bar. Whatever authority he had from Mrs. Stratton died with her. Without a shadow of interest or right, he caused the arrest of the plaintiff, and if the arrest was valid, it is no justification to him. Dicey on Parties, 432–3.

*S. S. Brown*, for the defendant.

LIBBEY, J. The great question involved in this case, is : Whether an execution issued and put into the hands of an officer for service during the life of the plaintiff in the execution, is abated by his death before service.

At common law, the rule is well settled that the death of the plaintiff does not abate the execution, and that it is the duty of the officer to serve it. A return by him of the death of the plaintiff is a bad return. *Cleve* v. *Veer*, Cro. Car. 459 ; *Thoroughgood's Case*, Noy, 73 ; *Ellis* v. *Griffith*, 16 Mees. & W. 106 ; *Comm.* v. *Whitney*, 10 Pick. 434 ; *Murray* v. *Buchanan*, 7 Blackf. 549 ; Freeman on Executions, § 37, and cases there cited.

In *Ellis* v. *Griffith*, 16 M. & W. 106, decided in 1846, POLLOCK, C. B., says :—"It appears from the case of *Cleve* v. *Veer*, that so far back as the reign of Charles I, CROKE, J., thus laid down the law :—'There is a difference betwixt a judicial writ after judgment to do execution and a writ original; for the writ judicial to make execution, shall not abate, nor is abatable by the death of him who sues it; as it is, the common course of a *capias ad satisfaciendum* or *fieri facias*, upon judgment issueth, the sheriff shall execute it, although the party who sued it, died before the return of the writ; and though the death be before or after the execution, if it be after the teste of the writ, it is well enough; as where a *capias ad satisfaciendum* is sued, and the party taken before or after the death of him who sued it, and before the day of the return; or if a *fieri facias* be awarded, and the money levied by the sheriff, and the plaintiff dies before the day of the return of the writ, yet the executor or his administrator shall have the benefit, and is to have the money, and it is no return for the sheriff to say that the plaintiff is dead; and therefore he did not execute it.' I believe that ever since that time, the administration of justice has proceeded on that principle, and that this *dictum* of CROKE, J., has been acted on in hundreds of instances. It is said that there are *dicta* somewhere else, which may affect the question, and it is suggested also, that perhaps some inconvenience may ensue from keeping this person in custody; but the inconvenience which was pointed out by Mr. Martin, namely, that where a defendant is taken in execution after the death of the plaintiff, there is no person to whom the money may be paid, is an inconvenience which, on principle, would call for our interference just as much in the case where the arrest of the defendant is made before the death of the plaintiff, who dies immediately after the arrest. I am therefore quite content to abide by so old a *dictum* as that of CROKE, J., and which has been so continually acted on." PARKE, ALDERSON and ROLFE, Barons, concurred.

But it is claimed by the plaintiff's counsel, that this rule of the common law has been changed by the provisions of our statutes, and is not law in this State. If it is found to be clearly incon-

sistent with the provisions of our statutes, so that the two cannot stand together, this result must follow. But no statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express. It is claimed that the form of the execution, the provisions of the statute giving the debtor who has been arrested the right to be released on giving the six months bond to the creditor; or to disclose on the execution on giving to the creditor the notice required, presuppose a living creditor who may determine whether he will accept the property shown to the officer by the debtor, if any; or to whom a bond may be given, or on whom notice may be served. This argument is of weight, and entitled to careful consideration; and if it be found on examination of all the provisions of our statutes bearing upon the question, that the legislature intended to change the common law, we must so declare. If, however, it be found that these provisions may be applicable to the case when the plaintiff in the execution is living, and that the legislature has enacted other provisions for the protection of the rights of the debtor, if the plaintiff is dead, then the whole may stand together consistently with the common law.

By R. S., c. 113, § 26, a debtor who has given bond, or has been committed, or delivered himself into the custody of the jailer, may apply to a justice of the peace, and have a citation issued to the creditor for his disclosure. By § 27, the citation may be served on the creditor, or one of them if more than one, or on the attorney of record in the suit, or any known, authorized agent of the creditor, *if the creditor is alive;* otherwise on his executor or administrator, if to be found in the State, and if not, by leaving a copy with the clerk of the court, or magistrate, who issued the execution. These provisions apply as well to a debtor committed after the death of the creditor, as to one committed before; and it seems to us they recognize the legality of the commitment in either case, and provide for the debtor a remedy for his release.

The argument of the plaintiff's counsel, drawn from the provisions of the statute relied on, applies with as much force to the

case of a debtor committed before the death of the creditor, if he die soon after, as to the case of one arrested and committed after the creditor's death; and their argument and conclusion seem to us, inconsistent with the statutory provisions to which we have referred.

Some light may be thrown on the question of the intent of the legislature, by looking at the consequences of the rule claimed by the plaintiff, in other respects. Suppose the plaintiff has an attachment of personal property to secure his debt, recovers judgment, takes execution and puts it into the hands of an officer, with directions to seize and sell the property attached; and before the sale, and just before the expiration of the thirty days from the rendition of judgment, the plaintiff dies; if his death abates the execution, the officer could proceed no further, and the attachment would be dissolved; and the property would go back into the hands of the debtor, or be taken by a second attaching creditor, if any; for we find no provisions of statute by which the attachment, in such case, could be preserved.

Again, suppose an officer, holding an execution against a debtor who has given bail, notifies the bail as is provided by statute, and the next day the plaintiff in the execution dies, and then the bail surrenders the principal to the officer. If the death of the plaintiff abates the execution, the officer would have no right to receive and hold the debtor by virtue of it. But is the surrender to go for nothing? It is not to be presumed that the legislature intended to establish a rule, practically producing these results, without providing some remedy by which the rights of the parties might be protected.

The same question involved in this case, was before the court, in *Comm.* v. *Whitney*, 10 Pick. 434, and the same argument, drawn from the form of the execution and the statutes, was urged upon it, but SHAW, C. J., after a careful examination of the case, says :—"The court are not prepared to say that the imprisonment was unlawful, so as to entitle the prisoner to his discharge forthwith as a matter of right." It is worthy of remark that, at that time, there was no statute in that state providing for the service of a citation when the creditor was dead and had no executor or administrator.

Our conclusion is that the statutory provisions involved, have not changed the common law, and that the death of the plaintiff in an execution does not abate it.

It was the legal duty of the officer to serve the execution put into his hands for that purpose before the death of the plaintiff; and a direction to the officer to serve it, by arresting the debtor, by the defendant did not render him a trespasser, although he may have had no interest in the execution, because no trespass was committed.

*Plaintiff nonsuit.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and SYMONDS, JJ., concurred.